UNITED STATES DISTRICT COURT FOR THE NOTHERN DISTRICT OF ILLINOIS

**Gabriela Schineider Rocha,**

**Plaintiff,**

v.

**Wayfair Inc., a Delaware Corporation**

**Defendant.**

## COMPLAINT

Plaintiff, by and through her attorneys, Mark Raven, LLC, hereby states and alleges the following, and says:

## PARTIES

1. Plaintiff Gabriela Schineider Rocha is a resident of Chicago, Illinois.

2. Defendant Wayfair Inc. is a Delaware corporation with a principal place of business in Boston, Massachusetts (hereinafter, "Defendant" or "Wayfair").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, as this case arises under federal law, specifically the Americans with Disabilities Act (also, "ADA"), 42 U.S.C. 12101 et seq.

4. In addition, this court has diversity jurisdiction under 28 U.S.C. § 1332 as Plaintiff is an Illinois resident and Defendant is a Delaware and Massachusetts resident for purposes of jurisdiction, and the amount claimed is in excess of the jurisdictional requirement.

5. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of Illinois and within this judicial district, and the events giving rise to this action occurred in this district, as the Plaintiff was a remote employee.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b), as a substantial part of the events giving rise to the claim occurred in this district.

## EEOC RIGHT TO SUE

7. On November 20, 2024, Plaintiff filed with the EEOC, claiming disability discrimination and retaliation. This is attached as Exhibit A.

8. On April 7, 2025, Defendant received a right to sue letter, attached as Exhibit B.

## STATEMENT OF FACTS

9. Plaintiff started with Wayfair in approximately 2017.

10. Defendant is a covered entity under the ADA, as they are a multi-state employer with approximately 13,500 employees.

11. In August of 2022, Plaintiff was diagnosed with a serious autoimmune disease; this disease was discovered after a flare-up of the condition.

12. Plaintiff's condition is an autoimmune disease that affects Plaintiff's day-to-day life and is considered a disability as defined under the Americans with Disabilities Act ("ADA").

13. In October of 2022 Plaintiff was approved for FMLA, showing the Defendant's knowledge of her autoimmune condition.

14. Plaintiff allowed FMLA to expire in 2023, while she was in a remote role and did not require travel.

15. Travel causes serious exacerbation of Plaintiff's medical condition.

16. Throughout this period of her employment, Plaintiff continued to get "exceeds expectations" reviews, and was thriving with the company despite her autoimmune issue.

17. Due in part to her consistently high performance during her employment, in December of 2023, Plaintiff was approached to apply for a new position where she would be leading teams opening new Wayfair outlets.

18. When she was approached for this role, and during the application and interview process, she was told that the position would require travel approximately two times a quarter (i.e. approximately eight times a year) and that she would be given flexibility to determine when travel occurred.

19. Plaintiff would be able to do this amount of travel with her auto-immune issue.

20. No written job description was ever provided to Plaintiff, and all representations were oral from the company.

21. Plaintiff was hired for this role in January 2024.

22. Almost immediately, Defendant requested substantially more travel from Plaintiff and Plaintiff was sent on substantially more trips than the company represented in the oral description of the job.

23. Shortly thereafter, Plaintiff asked the company about the increased travel, and for the first time, she was informed that her new role had a 50% travel requirement, not the two times a quarter travel requirement that she had originally been presented with.

24. She informed her manager, Laura Chan, that this would be an issue with her autoimmune disorder.

25. Upon information and belief, only then did Defendant create a written job description showing 50% travel. This was only done after Plaintiff specifically asked about the increased travel.

26. Plaintiff engaged in protected activity by officially submitting a request for disability accommodation on February 5, 2024.

27. While the parties were still going through the interactive accommodation process, Plaintiff received a performance review on March 1, 2024, which was her lowest performance review in several years, despite the fact it was a review of her performance in her previous position.

28. The performance review was given to her by Laura Chan, who was her new boss in her new role, with regard to her performance in her previous position. Laura Chan had no supervisory responsibility over Plaintiff's previous role and had never observed Plaintiff's performance in that position.

29. On March 12, 2024, Plaintiff reached an agreement with the company where a proposed accommodation was set in place that Plaintiff would travel once a month for a maximum of three days per trip (three times a quarter, twelve times a year, more than the initial representation regarding the position).

30. This accommodation was agreed upon between the parties.

31. However, this accommodation was never followed by the Company.

32. Over the next few weeks Plaintiff was pushed by her leadership to take multiple trips in a month, all of which were of extended duration.

33. Upon information and belief, Wayfair during this same time period, created another new job description for the position where it was set forth that now 80% of the position was

travel. This document was created only after Plaintiff accepted the position and had asked for reasonable accommodation.

34. On or around March 21, 2024, Plaintiff took part in a protected activity, reporting to her boss that her accommodations were not being followed during a 1:1 meeting.

35. During the same time period Plaintiff complained via email to human resources about the fact that her accommodation was not being followed.

36. On April 9-10, 2024, during a virtual "check in" with the department responsible for accommodations at Wayfair, Plaintiff reported that her agreed upon accommodations were not being followed. This was, again, a protected activity.

37. During this same time period, on or around March 25, 2024, Plaintiff was sent on a business trip, where she was required to do additional physical labor. As a result of this trip, she had a flare-up of her medical condition.

38. Plaintiff was then sent on another work trip on April 15, 2024, during this continuing flare-up. During this trip Plaintiff had to seek emergency medical treatment on April 18, 2025. The Defendant was aware of Plaintiff needing to have this medical treatment.

39. The day after this emergency medical treatment, which occurred on this work trip, Plaintiff's employment was terminated on April 19, 2024.

40. During the termination meeting, Defendant told Plaintiff that they could not accommodate her disability, despite Plaintiff's willingness to discuss accommodation and request for additional interactive process.

41. Defendant refused to go through the interactive process, despite never following the initial agreed upon accommodations.

42. At all times during her employment, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

43. The facts and circumstances surrounding Plaintiff's termination give rise to an inference of disability discrimination and retaliation.

44. Beyond this, the Defendant failed to engage in the interactive process as required under the ADA, and failed to follow agreed upon accommodations.

45. Defendant's actions were willful, intentional, and in reckless disregard of Plaintiff's rights under the ADA.

**Count I - Failure to Accommodate in Violation of the Americans with Disabilities Act 42 USCS § 12112**

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as Paragraph 46.

47. Plaintiff is a qualified individual with a disability under the definition included within the ADA.

48. Plaintiff has a physical impairment that substantially limits one or more major life activities.

49. Specifically, Plaintiff's autoimmune issues specifically limits life activities, including with regard to travel.

50. Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

51. Plaintiff informed Defendant of her disability at multiple times during her employment and in multiple ways, and the Defendant was aware of her disability.

52. Defendant was aware of this disability when it asked her to apply for the position she was eventually terminated from.

53. Plaintiff requested a reasonable accommodation for her disability, which the Defendant initially acted as if they were agreeing to, but then refused to follow the agreed upon accommodation.

54. This initial accommodation was reasonable and would not have imposed an undue hardship on Defendant, and Defendant admitted as much.

55. The Defendant being aware of Plaintiff's disability, and initially granting a reasonable accommodation shows that accommodations were possible for this position.

56. However, the Defendant failed to abide by the agreed upon reasonable accommodation and then refused to even undergo the interactive process to come to a modified reasonable accommodation, even after Plaintiff's multiple requests to do so.

57. Defendant failed to explain or show why such an accommodation was not possible, and why they refused to go through this interactive process.

58. The Defendant failed to accommodate under the ADA in several ways:

    a. by failing to abide by the initial negotiated accommodation;

    b. going through the initial interactive process in bad faith;

    c. by changing the terms of Plaintiff's job description multiple times while Plaintiff held the position;

    d. by failing to follow the accommodation and then refusing to go through the interactive process;

    e. terminating the Plaintiff without following the agreed accommodation and/or going through the interactive process again.

59. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor on Count I against Defendant, and award the following relief for:

a. Back pay and benefits;

b. Front pay;

c. Compensatory damages;

d. Punitive damages;

e. Attorneys' fees and costs pursuant to the ADA;

f. Pre-judgment and post-judgment interest as allowed by law; and

g. Such other relief as the Court deems just and proper.

**Count II - Wrongful Termination in Violation of the Americans with Disabilities Act**

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as Paragraph 60.

61. Plaintiff has a disability as defined by the ADA.

62. Plaintiff's medical condition substantially limits one or more major life activities.

63. Plaintiff was qualified to perform the essential functions of the job with or without reasonable accommodation.

64. Throughout her time at the company, Plaintiff successfully performed her job duties and met or exceeded Defendant's legitimate expectations, as shown by Plaintiff's annual reviews.

65. After taking this new position in January of 2024, Plaintiff constantly dealt with a company who changed the job description time and again, making it more and more difficult for a person with her disability.

66. Wayfair offered her what they considered to be reasonable accommodations; however, they failed to follow the agreed upon accommodation, and violated the agreed upon accommodations time and again.

67. After Wayfair refused to follow the agreed upon accommodation, they also refused to go through the interactive process and/or discuss a modified reasonable accommodation, telling Plaintiff that they could not accommodate her in this role.

68. The Defendant terminated the Plaintiff the day after she had to go to urgent care for her medical condition, caused by a work trip she was required to go on.

69. The facts and circumstances show that the Plaintiff's termination was due to her disability, and thus gives rise to a finding of disability discrimination.

70. Plaintiff suffered an adverse employment action when Defendant terminated her employment on April 19, 2024.

71. Defendant's conduct violated the ADA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor on Count II against Defendant, and award the following relief:

a. Back pay and benefits;

b. Front pay;

c. Compensatory damages;

d. Punitive damages;

e. Attorneys' fees and costs pursuant to the ADA;

f. Pre-judgment and post-judgment interest as allowed by law; and

g. Such other relief as the Court deems just and proper.

**Count III - Retaliation in Violation of the Americans with Disabilities Act**

72. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as Paragraph 72.

73. Plaintiff engaged in protected activity under the ADA in February of 2024 when she asked for reasonable accommodation for her new position.

74. Plaintiff engaged in further protected activity in March of 2024 under the ADA when she complained via email regarding the Defendant's failure to follow the agreed upon accommodation.

75. Plaintiff had ongoing communications regarding these accommodations, all of which were protected activities.

76. Plaintiff further engaged in protected activity when she orally complained on April 9-10, 2024 that the agreed upon accommodation was not being followed.

77. Just over a week later, Defendant took an adverse employment action against Plaintiff, by terminating Plaintiff's employment.

78. There was a causal connection between Plaintiff's protected activities and complaints, and Defendant's adverse employment action.

79. Defendant's conduct violated the ADA

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor on Count III against Defendant, and award the following relief:

a. Back pay and benefits;

b. Front pay;

c. Compensatory damages;

d. Punitive damages;

e. Attorneys' fees and costs pursuant to the ADA;

f. Pre-judgment and post-judgment interest as allowed by law; and

g. Such other relief as the Court deems just and proper.

Date:  July 2, 2025                                                    Respectfully submitted,

                                                                        /s/ *Justin Burtnett*
                                                                        One of the Attorneys for Plaintiff

MARK RAVEN LLC
Justin Burtnett
Darren VanPuymbrouck
2524 N. Burling Street
Chicago, IL 60614
312 304-9530
Justin@raven.law
Darren@raven.law

"A"

Docusign Envelope ID: 834110BB-B6C3-4AB0-8F11-520F16C89EAD

Issued October 2017

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**CHARGE OF DISCRIMINATION**   For Official Use Only – Charge Number: 440-2025-01084

EEOC Form 5A (Sept. 1, 2017)

| **Personal Information** | First Name: Gabriela MI: _____ Last Name: Schineider Rocha<br><br>Address: 1560 N Sandburg Ter Apt.: 304J City: Chicago County: Cook State: IL<br><br>Zip Code: 60610 Phone: (339) 224-8970 Home □ Work □ Cell X<br><br>Email Address: gabschineider@gmail.com |
|---|---|
| **Who do you believe discriminated against you?** | Employer X Union □ Employment Agency □ Other Organization □<br><br>Organization Name: Wayfair<br><br>Address: 4 Copley Place, 7th floor Suite: _____ City: Boston State: MA Zip Code: 02116<br><br>Phone: 1-617-532-6100 |
| **Why you believe you were discriminated against?** | Age □ Color □ Disability X Genetic Information □ National Origin □ Race □ Religion □<br><br>Retaliation X Sex □ |
| **What happened to you that you believe was discriminatory?** | Date of most recent job action you believe was discriminatory: _____ Describe briefly <u>each job action you believe was discriminatory</u> and when it happened (estimate).<br><br>**Disability Discrimination & Failure to Accommodate:**<br>Respondent is aware of my disabilities. On 2/5/24, I requested reasonable ADA accommodations for limited travel, which were initially agreed upon on 3/12/24. However, between 3/12/24 and 4/19/24, Wayfair failed to honor the accommodations, increased travel requirements without consultation, and refused to engage in the interactive process, ultimately terminating me on 4/19/24, due to my disability.<br><br>**Retaliation for Requesting Accommodation:**<br>Following my accommodation request, I received my lowest performance review in years on 3/1/24 and faced increased scrutiny. After raising concerns about unmet agreed-upon accommodations, Wayfair terminated my employment in retaliation on 4/19/24. |

| Signature and Verification | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on Age, Color, Disability, Genetic information, National Origin, Religion, Sex, or based on retaliation for: filing a charge of employment discrimination; helping in someone else's complaint about job discrimination; or complaining to the employer about job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>Signature: *Gabriela Schneider Rocha* (DocuSigned by: 3B97C66D17ED48F...) Date: **11/20/24** |
|---|---|

"B"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: April 7, 2025

**To:** Gabriela Schineider Rocha
1560 N Sandburg Ter Unit 304J
CHICAGO, IL 60610
Charge No: 440-2025-01084

| EEOC Representative and email: | KATARZYNA HAMMOND
Investigator
katarzyna.hammond@eeoc.gov |

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2025-01084.

On behalf of the Commission,

Digitally Signed By: Amrith Kaur Aakre

Amrith Kaur Aakre
District Director

**Cc:**
Michael Licker
Wayfair
4 COPLEY PL STE 700 100 HUNTINGTON
Boston, MA 02116


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2025-01084 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2025-01084 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.